LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

CARLOS MENDEZ,
EVELYN MATA DE TEMPERINO,
*on behalf of themselves,*
*FLSA Collective Plaintiffs and the Class,*

               Plaintiffs,

               v.

CRYSTAL BALL GROUP INC.,
    d/b/a TERRACE ON THE PARK,
GEORGE MAKKOS,
THOMAS MAKKOS and
DIMITRIOS KALOIDIS,

               Defendants.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

---

Plaintiffs, CARLOS MENDEZ and EVELYN MATA DE TEMPERINO ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this class and collective action Complaint against Defendants, CRYSTAL BALL GROUP INC. d/b/a TERRACE ON THE PARK (the "Corporate Defendant"), GEORGE MAKKOS, THOMAS MAKKOS and DIMITRIOS KALOIDIS (the "Individual Defendants," and together with Corporate Defendant, the "Defendants"), and state as follows:

1

## INTRODUCTION

1. Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid wages due to time shaving, (2) illegally retained gratuities, (3) unreimbursed uniform costs, (4) liquidated damages, and (5) attorneys' fees and costs.

2. Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid wages due to time shaving, (2) illegally retained gratuities, (3) unpaid spread of hours premium, (4) unreimbursed uniform costs, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5. Plaintiff CARLOS MENDEZ is a resident of Queens County, New York.

6. Plaintiff EVELYN MATA DE TEMPERINO is a resident of Queens County, New York.

7. Defendants own and operate a banquet hall under the trade name "TERRACE ON THE PARK," located at 52-11 111th Street, Flushing Meadows Park, New York 11368 (the "Banquet Hall").

8. Defendants operate the Banquet Hall through Corporate Defendant CRYSTAL BALL GROUP INC. d/b/a TERRACE ON THE PARK. Corporate Defendant CRYSTAL BALL

GROUP INC. d/b/a TERRACE ON THE PARK is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 52-11 111th Street, Flushing Meadows Park, New York 11368. Individual Defendants are the owners of CRYSTAL BALL GROUP INC. d/b/a TERRACE ON THE PARK.

9. Individual Defendants:

(a) Individual Defendant GEORGE MAKKOS is a co-owner, co-principal and the Chief Executive Officer of Corporate Defendant CRYSTAL BALL GROUP INC. d/b/a TERRACE ON THE PARK. GEORGE MAKKOS exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all times, employees could complain to GEORGE MAKKOS regarding any of the terms of their employment, and GEORGE MAKKOS would have the authority to effect any changes to the quality and terms of employees' employment. GEORGE MAKKOS ensured that employees effectively serve customers and that the business is operating efficiently and profitably. GEORGE MAKKOS exercised functional control over the business and financial operations of Corporate Defendant. GEORGE MAKKOS had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

(b) Individual Defendant THOMAS MAKKOS is a co-owner and co-principal of Corporate Defendant CRYSTAL BALL GROUP INC. d/b/a TERRACE ON THE PARK. THOMAS MAKKOS exercised control over the terms and conditions of Plaintiffs' employment

and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all times, employees could complain to THOMAS MAKKOS regarding any of the terms of their employment, and THOMAS MAKKOS would have the authority to effect any changes to the quality and terms of employees' employment. THOMAS MAKKOS ensured that employees effectively serve customers and that the business is operating efficiently and profitably. THOMAS MAKKOS exercised functional control over the business and financial operations of Corporate Defendant. THOMAS MAKKOS had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

(c) Individual Defendant DIMITRIOS KALOIDIS is a co-owner and co-principal of Corporate Defendant CRYSTAL BALL GROUP INC. d/b/a TERRACE ON THE PARK. DIMITRIOS KALOIDIS exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all relevant times, employees could complain to DIMITRIOS KALOIDIS regarding any of the terms of their employment, and DIMITRIOS KALOIDIS would have the authority to effect any changes to the quality and terms of employees' employment. DIMITRIOS KALOIDIS ensured that employees effectively serve customers and that the business is operating efficiently and profitably. DIMITRIOS KALOIDIS exercised functional control over the business and financial operations of Corporate Defendant.

DIMITRIOS KALOIDIS had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

10. At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

11. At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

12. At all relevant times, Defendants employed at least eleven (11) employees as defined under the NYLL.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

13. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including servers, bussers, runners, barbacks, bartenders, cooks, line cooks, food preparers, dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

14. At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their (1) proper wages, including the overtime thereof, due to time shaving, and (2) unreimbursed uniform costs. A subclass of tipped employees has a claim for illegally retained gratuities. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

15. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS – NEW YORK**

16. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including servers, bussers, runners, barbacks, bartenders, cooks, line cooks, food preparers, dishwashers, among others) employed by Defendants at the Restaurants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

17. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

18. The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees

("Tipped Subclass") who also number more than forty (40). Plaintiffs are members of both the Class and the Tipped Subclass.

19. Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay wages due to time-shaving, (ii) failing to pay spread of hours premium, (iii) failing to reimburse uniform and uniform maintenance costs, (iv) failing to provide Class members with proper wage statements with every payment of wages, and (v) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law.

20. With regard to Plaintiffs and the Tipped Subclass, Defendants also failed to reimburse them their gratuities. Plaintiffs and the Tipped Subclass suffered from Defendants' illegal retention of gratuities. Defendants illegally retained gratuities from banquet events by charging a gratuity associated with banquet events without informing banquet and event customers that such fees did not constitute gratuities and would not be remitted to tipped employees.

21. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

22. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced

and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

23. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a. Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

    b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

    c. At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class members for their work;

    d. Whether Defendants properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

    e. Whether Defendants paid Plaintiffs and Class members the proper overtime compensation under the New York Labor Law;

    f. Whether Defendants retained any portion of the gratuities for their tipped employees;

g. Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements under the New York Labor Law;

h. Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law;

i. Whether Defendants failed to reimburse Plaintiffs and Class members for uniform expenses and uniform maintenance costs;

j. Whether Defendants paid Plaintiffs and Class members the proper wage for all hours worked; and

k. Whether Defendants paid Plaintiffs and Class members the New York State "spread of hours" premium when their workdays exceeded ten hours.

## STATEMENT OF FACTS

26. Plaintiff CARLOS MENDEZ:

(a) In or around July 2017, Plaintiff was hired by Defendants to work as a bartender at Defendants' Terrace on the Park, located at 52-11 111th Street, Flushing Meadows Park, New York 11368. Plaintiff worked for Defendants until in or around July 2019.

(b) Throughout Plaintiff's employment with Defendants, Plaintiff on average, worked three (3) to four (4) days per week, from six (6) to eight (8) hours per workday, for a total of eighteen (18) to thirty-two (32) hours per week. However, during the months of November and December, Defendants' busy season, Plaintiff regularly worked five (5) days per week, from 5:00pm to 1:00am, for forty (40) hours per week. When Plaintiff's work hours neared 40 hours per week, Defendants canceled the rest of his shift to avoid compensating Plaintiff for his

overtime hours. On occasion, during November and December, Plaintiff worked a double shift, working for over a spread of ten (10) hours, but he was not compensated his spread of hours premium. FLSA Collective Plaintiffs and Class Members were scheduled to work a similar number of hours per week.

(c) In 2017, Plaintiff was compensated at a rate of $11.50 per hour. Thereafter, Plaintiff was compensated at the prevailing New York State minimum wage rate for each subsequent year. In 2018, Plaintiff was compensated at a rate of $13.00 per hour. In 2019, Plaintiff was compensated at a rate of $15.00 per hour. FLSA Collective Plaintiffs and Class Members were all compensated at similar rates throughout their employment.

27. Plaintiff EVELYN MATA DE TEMPERINO:

(a) In or around April 2017, Plaintiff was hired by Defendants to work part-time as a bartender at Defendants' Terrace on the Park, located at 52-11 111th Street, Flushing Meadows Park, New York 11368. Plaintiff is still employed by Defendants.

(b) Throughout Plaintiff's employment with Defendants, Plaintiff on average, worked three (3) days per week, from six (6) to nine (9) hours per workday, for a total of eighteen (18) to twenty-seven (27) hours per week. FLSA Collective Plaintiffs and Class Members working part-time were scheduled to work a similar number of hours per week.

(c) In 2017, Plaintiff was compensated at a rate of $11.50 per hour. Thereafter, Plaintiff was compensated at the prevailing New York State minimum wage rate for each subsequent year. In 2018, Plaintiff was compensated at a rate of $13.00 per hour. In 2019, Plaintiff was compensated at a rate of $15.00 per hour. FLSA Collective Plaintiffs and Class Members were all compensated at similar rates throughout their employment.

28. At all times, Plaintiffs, FLSA Collective Plaintiffs and Class Members suffered from Defendants' policy of time-shaving, including the improper rounding of their work hours and the improper deduction of their meal break. As a result of Defendants' time-shaving, on average, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were not compensated for at least two hours and fifteen minutes per week. However, during Defendants' busy season in the months of November and December, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were not compensated for at least three hours and forty-five minutes per week. During weeks in which Plaintiff MENDEZ, FLSA Collective Plaintiffs and Class Members were paid near forty (40) hours per week in November and December, some of their time-shaved hours were uncompensated overtime hours and should be paid at the overtime premium. These time-shaved hours were never correctly reflected in employees' work hours.

29. At all times, Plaintiffs, FLSA Collective Plaintiffs and Class Members were compensated on rounded work hours and not for their actual hours worked. At all times, Plaintiffs' total work hours were always rounded down to the nearest quarter hour for each workday. Plaintiffs, FLSA Collective Plaintiffs and Class Members were then paid on the rounded hours, such that their wage statements always ended in .00, .25, .50, and .75. At all times, Defendants failed to compensate Plaintiffs, FLSA, Collective Plaintiffs and Class Members for approximately fifteen (15) minutes per workday due to improper rounding.

30. At all times, Plaintiffs also suffered from Defendants' policy of time shaving for a meal break deduction. At all times, Defendants deducted half an hour per workday for a meal break for Plaintiffs, FLSA Collective Plaintiffs and Class Members. However, all Class Members were required to work through their meal breaks or were unable to take their full meal

break. Because of Defendants' policy of time-shaving, Plaintiffs, FLSA Collective Plaintiffs and Class Members did not receive compensation for all of their hours worked.

31. At all times, Defendants' policy of time-shaving and rounding were willful and done intentionally to reduce employees' work hours so that Defendants could avoid compensating employees for any overtime hours worked. Defendants' policy was willful because when an employee's work hours, after rounding down to the nearest quarter and after deducting a half an hour meal break per day, neared forty (40) hours per week, the employee's remaining schedule for the week was canceled.

32. Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass suffered from Defendants' illegal retention of gratuities. Defendants illegally retained gratuities at banquets and events by retaining all tips earned during such events. Banquet and event customers are charged a "gratuity" which was purported to be gratuities for tipped employees, and banquet event customers were not informed that such fees and charges were not considered gratuity and would not be distributed to tipped employees. At all times, Defendants never remitted such gratuities to Plaintiffs, FLSA Collective Plaintiffs and Class members. Defendants compensated Plaintiffs, FLSA Collective Plaintiffs and Class Members at rates of at least the prevailing state minimum wage rate to avoid remitting such gratuities to tipped employees. However, such gratuities must nonetheless be remitted to Plaintiffs, FLSA Collective Plaintiffs and Class Members regardless of whether Defendants claimed a tip credit as Defendants are not permitted to accept any gratuity. Customers during these banquets and events have informed Plaintiffs and other employees that they have left gratuity, however, Plaintiffs and their fellow tipped employees have never received any portion of these purported gratuities left by customers.

33. In or around November and December, Defendants' busy season, Plaintiff MENDEZ and other Class members were required to work days that exceed ten hours in length, but Defendants unlawfully failed to pay Plaintiff MENDEZ and Class members the spread of hours premium for workdays that exceeded ten hours in length.

34. Plaintiffs, FLSA Collective Plaintiffs and Class Members were required to purchase tuxedos, which must be dry-cleaned, to work at Defendants' Terrace on the Park. Plaintiffs MENDEZ and MATA DE TEMPERINO spent $180 and $350, respectively, for their tuxedos. Plaintiff MATA DE TEMPERINO was further required to spend approximately $160 for additional dress shirts and dress pants. Plaintiff MENDEZ, employed full time, spent approximately $24 per week to dry-clean his tuxedo. Plaintiff MATA DE TEMPERINO, employed part time, spent approximately $13 biweekly to dry-clean the tuxedo blazer. Other FLSA Collective Plaintiffs and Class Members were similarly required to purchase tuxedos and to pay for uniform maintenance costs on a regular basis. At all times, Defendants failed to reimburse Plaintiffs and Class Members for their uniform costs and failed to pay them their uniform maintenance pay in violation of the NYLL. Defendants further illegally received a kick-back for failing to reimburse Plaintiffs and Class Members for their uniform costs in violation of the FLSA.

35. Defendants failed to provide Plaintiffs and the Class members with proper wage notices at hiring and annually thereafter. Plaintiffs did not receive proper wage notices either upon being hired or annually since the date of hiring in violation of the New York Labor Law.

36. Plaintiffs and Class members failed to provide proper wage statements in compliance with the New York Labor Law. At all relevant times, Defendants provided fraudulent wage statements to Plaintiffs, which failed to accurately show the number of hours worked by

Plaintiffs in a given workweek. Defendants' wage statements further failed to itemize a uniform maintenance pay, which Defendants were required to pay Plaintiffs. Class Members received similar fraudulent wage statements due to Defendants' policy of time shaving, failure to pay spread of hours, and failure to reimburse uniform and uniform maintenance costs.

37. Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiffs, FLSA Collective Plaintiffs and Class members due to Defendants' time-shaving policies.

38. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked.

39. Defendants knowingly and willfully operated their business with a policy of illegally retaining gratuities from Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass.

40. Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiff MENDEZ and Class members, in violation of the NYLL.

41. At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice that failed to reimburse or compensate Plaintiffs, FLSA Collective Plaintiffs and Class Members for uniform and uniform maintenance costs.

42. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

43. Defendants failed to provide proper wage notices to employees, at the beginning of employment and annually thereafter, pursuant to the requirements of the New York Labor Law.

44. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

45. Plaintiffs reallege and reaver Paragraphs 1 through 44 of this class and collective action Complaint as fully set forth herein.

46. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

47. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

48. At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

49. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all overtime hours worked at the statutory rate of time and one-half, including overtime wages owed due to Defendants' policy of time-shaving.

50. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all of their hours worked due to Defendants' policy of time shaving.

51. At all relevant times, Defendants engaged in a policy and practice of refusing to reimburse Plaintiffs and FLSA Collective Plaintiffs for their uniform and uniform maintenance costs, thereby receiving a kick-back for uniform costs.

52. At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by illegally retaining gratuities.

53. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

54. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

55. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

56. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, damages representing disgorgement of illegally retained tips, damages representing unreimbursed uniform and uniform maintenance costs, plus an equal amount as liquidated damages.

57. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

58. Plaintiffs reallege and reaver Paragraphs 1 through 57 of this class and collective action Complaint as fully set forth herein.

59. At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

60. At all relevant times, the Defendants had a policy and practice of refusing to pay Plaintiffs and Class members for all of their hours worked, including their overtime hours, due to Defendants' policy of time shaving.

61. Defendants willfully violated Plaintiffs and the Tipped Subclass members' rights by illegally retaining gratuities.

62. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay "spread of hours" premium to them for each workday that exceeded ten (10) or more hours.

63. Defendants willfully violated Plaintiffs' and Class members' rights by failing to reimburse them for their uniform and uniform maintenance costs.

64. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

65. Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

66. Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid wages, damages representing disgorgement of illegally retained tips, unpaid spread of hours premium, damages representing

unpaid uniform and uniform maintenance costs, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages due under the FLSA and the New York Labor Law, including those due to time shaving;

d. An award of unpaid "spread of hours" premium due under the New York Labor Law;

e. An award equal to the amount of the improperly retained tips withheld by Defendants;

f. An award equal to the amount of unreimbursed uniform and uniform maintenance costs due under the FLSA and NYLL;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the New York Labor Law;

i.  An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

l.  Designation of Plaintiffs as Representatives of the Class; and

m.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: July 24, 2019

                        Respectfully submitted,

                  By:  */s/ C.K. Lee*
                        C.K. Lee, Esq.

                        LEE LITIGATION GROUP, PLLC
                        C.K. Lee (CL 4086)
                        Anne Seelig (AS 3976)
                        148 West 24th Street, Eighth Floor
                        New York, NY 10011
                        Tel.: 212-465-1188
                        Fax: 212-465-1181
                        *Attorneys for Plaintiffs,*
                        *FLSA Collective Plaintiffs and the Class*